1

2

3

4

5

6

7

8

IN THE SUPERIOR COURT OF WASHINGTON
IN AND FOR KING COUNTY

9

JOSUE GONZALEZ,

NO.

10

Plaintiffs,

**COMPLAINT FOR VIOLATIONS OF 15**

11

vs.

**U.S.C. § 1692 ET SEQ. AND RCW**
**CHAPTERS 19.16 AND 19.86 ET SEQ.**

12

NATIONAL CREDIT SYSTEMS, INC.

13

Defendant.

14

15

COME NOW Plaintiff, Josue Gonzalez, by and through counsel, who alleges:

16

I.    PARTIES AND JURISDICTION

17

1.    Plaintiff Josue Gonzalez is an individual from whom Defendant, National Credit

18

Systems, Inc. ("NCS") attempted to collect an alleged debt.

19

2.    Defendant NCS, a foreign profit corporation, UBI #602254298, is a debt collector

20

and licensed collection agency doing business in Washington, and who repeatedly attempted to

21

collect an alleged debt from Plaintiff.  NCS' registered agent is CT Corporation System, 711

22

Capitol Way S. Ste. #204, Olympia, WA 98501.

23

3.    Jurisdiction over Defendant is proper as Defendant is doing business in

**Exhibit A**
**Page 1 of 44**

Complaint - 1

**ANDERSON | SANTIAGO**
207B SUNSET BLVD. N.
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

1    Washington State.

2    **II.    FACTS**

3    4.    In early 2024, Defendant NCS began contacting Plaintiff, Josue Gonzalez

4    regarding an alleged debt owed to Prairie View Apartment Homes, which is managed by

5    Cascade Management Inc.

6    5.    In February 2024, Plaintiff received a letter from NCS, claiming that he owed

7    $16,296.00.  A copy of the letter is attached as **Exhibit A**.

8    6.    Mr. Gonzalez was extremely confused, as he had not lived at Prairie View

9    Apartments since 2014.  While he had moved out in 2014, his mother continued to live in the

10    apartment until October 2023.

11    7.    Mr. Gonzalez's wife contacted NCS by phone to try and understand why her

12    husband was being contacted for his mother's debt.  Rather than providing answers, NCS

13    attempted to gather information to assist in its collection efforts.

14    8.    Still confused, Mr. Gonzalez and his wife tried to get information from Cascade

15    Management/Prairie View.  After several calls, the Gonzalezes received an email from the

16    property manager on February 20, 2024.

17    9.    The email stated that Prairie View/Cascade Management had no paperwork

18    related to Mr. Gonzalez living at the apartment beyond 2014.  The e-mail expressed confusion as

19    to why Mr. Gonzalez was being contacted at all about the debt.  A copy of the e-mail is attached

20    as **Exhibit B**.

21    10.    Over the course of the next several weeks, the Gonzalezes attempted to reason

22    with NCS regarding the debt, confronting NCS with the information they received from Prairie

23    View/Cascade Management, but NCS would not budge.

Complaint - 2

Exhibit A
Page 2 of 44

**ANDERSON|SANTIAGO**
207B SUNSET BLVD. N.
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

11.     In fact, despite the original creditor not having any documentation showing Mr. Gonzalez lived in the apartment, NCS represented that it had several years' worth of documents demonstrating that Mr. Gonzalez lived in the apartment until 2023 (he did not).

12.     When the Gonzalezes asked for this documentation, NCS' responded by only sending a copy of a 2012-2013 lease agreement that had Mr. Gonzalez's name on it.  A copy of the letter and accompanying documents is attached as **Exhibit C**.

13.     NCS' representative continued to attempt to have Mr. Gonzalez pay the debt that he did not owe, threatening to place the debt on his credit report.

14.     Eventually, Mr. Gonzalez was forced to throw up his hands, as NCS could not be reasoned with.  Feeling defeated, Mr. Gonzalez did not know what to do.

15.     Adding insult to injury, in March 2024, NCS followed through on its threat and reported the debt to Mr. Gonzalez's credit.

16.     On May 2, 2024, Mr. Gonzalez received a letter from the law office of Brett M. Borland, P.C. ("Borland"), demanding that he pay $16,296.00 for "an agreement with PRAIRIE VIEW / CASCADE."  A copy of the letter is attached as **Exhibit D**.  Borland's letter did not reference NCS at all, however it contained the same account number as NCS' letter (5335535). Moreover, NCS continued to report to Mr. Gonzalez's credit.

17.     Shortly after receiving the letter, the Gonzalezes contacted Borland by phone and explained the same thing they had explained that: 1) Mr. Gonzalez had not lived in the apartment since 2014, 2) that his mother had continued to live there through 2023, and 3) that Prairie View/Cascade Management – the alleged original creditor - did not understand why he was being contacted.

18.     Borland responded by stating that it was definitely Mr. Gonzalez's debt because

**ANDERSON | SANTIAGO**
207B Sunset Blvd. N.
Renton, WA 98057
(206) 395-2665/F (206) 395-2719

his name was on the lease (ostensibly referring to the lease that had expired in 2013).

19.     Now that an attorney had become involved, the Gonzalezes knew the situation had gone from bad to worse.

20.     On May 11, 2024, Mr. Gonzalez sent letters to NCS and its apparent attorney, Borland, explaining that he had not lived in the apartment for over a decade.  To punctuate the point, he sent copies of a lease agreement where he currently resides, as well as documents from the Washington Department of Licensing demonstrating the last time he had changed his address (to his current address).[1]

21.     Mr. Gonzalez sent the letters via certified mail, and the letters were both delivered to NCS and the law office of Brett M. Borland on May 16, 2024.

22.     Mr. Gonzalez's letter and proof were ignored, as NCS continued to report the alleged debt to the credit bureaus.  Moreover, the law office of Brett M. Borland sent a responsive letter, again demanding money and attaching a final account statement and some correspondence from Prairie View Apartments.  A copy of the letter is attached as **Exhibit E**.

23.     Remarkably, none of the documents sent by NCS' attorney contained the name Josue Gonzalez.

24.     Thus, despite Mr. Gonzalez providing proof that he was not responsible, and NCS' own documents not even mentioning his name, NCS and its attorney continued to try and collect money from Mr. Gonzalez that he did not owe.

25.     As a result of Defendants' actions detailed above, Plaintiff has incurred expenses in seeking and retaining counsel in connection with ascertaining his legal rights and responsibilities, have suffered damaged credit, and has suffered financial uncertainty, unease,

---

[1] The address prior to the current address was also not at Prairie View Apartments.

Complaint - 4

**ANDERSON | SANTIAGO**
207B SUNSET BLVD. N.
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

and distress caused by the false, improper, and confusing nature of the debt and related collection efforts.

### III.    CAUSES OF ACTION

### GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

26.    With respect to the alleged debt, Plaintiff is a consumer as defined by 15 U.S.C. § 1692a(3) and Defendant is a debt collector as defined by 15 U.S.C. § 1692a(6).

27.    With respect to the alleged debt, Plaintiff is a "debtor" as defined by RCW 19.16.100(8) and Defendant is a collection agency as defined by RCW 19.16.100(4).

28.    For claims arising under the Fair Debt Collection Practices Act, such claims are assessed using the "least sophisticated debtor" standard. *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007).

### Count 1 (and all subcounts)

29.    A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. This includes the false representation of the character, amount, or legal status of a debt (§ 1692e(2)), the threat to take any action which cannot be legally taken (§ 1692e(5)), communicating to any person credit information which is false or should be known to be false (§ 1692e(8)), or the use of any false representation or deceptive means to collect or attempt to collect a debt (§ 1692e(10)).

30.    Defendant NCS used false, deceptive, or misleading representations or means in connection with the collection of an alleged debt when it, among other actions:

a)    Demanded, in writing and by phone, that Plaintiff pay an amount which was not owed;

b)    Issued adverse credit reporting demanding amounts not owed;

Exhibit A
Page 5 of 44

Complaint - 5

ANDERSON | SANTIAGO
207B SUNSET BLVD. N.
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

c)  Attempted to leverage false balances and improper supporting documents

against Plaintiff's creditworthiness to obtain a payment.

d)  Represented that there were documents demonstrating Mr. Gonzalez's

liability for the debt when no such documents existed.

31.    Therefore, Defendant NCS violated 15 U.S.C. § 1692e, and/or its subsections, on

numerous occasions.

### Count 2 (and all subcounts)

32.    A debt collector may not use unfair or unconscionable means to collect or attempt

to collect any debt.  15 U.S.C. § 1692f.

33.    Plaintiffs reallege the allegations in Count 1 *supra*, as constituting unfair and

unconscionable means to collect a debt.

34.    In summary, the Defendant NCS therefore violated 15 U.S.C. § 1692f and/or §

1692f(1) on numerous occasions.

### Count 3 – Violation of the WCAA as a CPA Violation

35.    Violations of RCW 19.16.250 are per se violations of the Consumer Protection

Act ("CPA"), RCW chapter 19.86.[2]  *See* RCW 19.16.440.  RCW 19.86.090 provides for treble

damages (to a limit of $25,000) and attorney's fees.

36.    Because RCW Chapter 19.16 is enforced through RCW 19.86 *et seq.*, the below

counts alleging violations of RCW Chapter 19.16 are therefore CPA violations.

37.    Even minimal or nominal damages constitute "injury" under the CPA.  *Panag*,

166 Wn.2d at 57.  A plaintiff need not prove any monetary damages at all, as even

---

[2] *See Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53 (2009) ("Consumer debt collection is a highly regulated field.  When a violation of debt collection regulations occurs, it constitutes a per se violation of the CPA…").

Complaint - 6

ANDERSON | SANTIAGO
207B SUNSET BLVD. N.
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

1    "unquantifiable damages" suffice to establish "injury" for purposes of the CPA. *Id.* (citing

2    *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 740 (1987

3         38.    RCW 19.16.250(21) prohibits the collection, or attempted collection, of any

4    amounts in addition to the principal of a claim other than allowable interest, collection costs, or

5    handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable

6    court costs.

7         39.    Here, Defendant NCS demanded money on numerous occasions for amounts that

8    were not owed through phone calls, letters, and credit reporting.

9         40.    Each attempt to collect money from Plaintiff constitutes a separate attempt to

10   collect amounts obviously not owed.

11        41.    Defendant therefore violated RCW 19.16.250(21) upon each debt collection

12   attempt.

13                     **Count 5 – CPA Violations**

14        42.    The Washington Supreme Court has held that a violation of debt collection status,

15   including the FDCPA, serves as a predicate for a per se Consumer Protection Act Violation as a

16   matter of law. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53 (2009); *Hoffman v.*

17   *Transworld Sys., Inc.,* 806 F. App'x 549 (9th Cir. 2020).

18        43.    The FDCPA violations identified, *supra*, also constitute per se violations of the

19   Washington CPA.

20        44.    Plaintiff's injuries are stated *supra*.

21        45.    Thus, Defendant violated the CPA.

22                     **Request for Injunctive Relief**

23        46.    A plaintiff may seek injunctive relief for violations of the Consumer Protection

Complaint - 7

**ANDERSON | SANTIAGO**
207B SUNSET BLVD. N.
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

1    Act.  RCW 19.86.090.  Plaintiffs do seek injunctive relief from this Court which would enjoin

2    Defendant from collecting debts in the manner described above from both Plaintiffs and any

3    other person similarly situated.  *Scott v. Cingular Wireless*, 160 Wn. 2d 843, 853 (2007).

4        47.    Additionally, Plaintiff seeks an injunction prohibiting NCS from its unlawful

5    collection tactics, including but not limited to demanding money that is not owed and reporting

6    amounts not owed to alleged debtors' credit, specifically Mr. Gonzalez

7        48.    Plaintiff has reason to believe these actions may constitute a pattern and practice

8    of behavior and have impacted other individuals similarly situated.

9        49.    Injunctive relief is necessary to prevent further injury to Plaintiff and to the

10   Washington public as a whole.

11       50.    Injunctive relief should therefore issue as described herein.

12                            IV.  **PRAYER FOR RELIEF**

13   WHEREFORE, Plaintiffs pray:

14       1.    For Judgment against Defendant for actual damages.

15       2.    For statutory damages of $1,000.00, for FDCPA violations.

16       3.    For statutory damages of $7,500.00 per violation, for Washington Collection

17   Agency Act and Consumer Protection Act violations.

18       4.    For treble damages, pursuant to RCW 19.86.090, calculated from the damages

19   determined by the court.

20       5.    For costs and reasonable attorney's fees as determined by the Court pursuant to

21   15 U.S.C. 1692k(a)(3) and RCW 19.86. et seq.

22       6.    For injunctive relief pursuant to RCW 19.86.090 as described above.

23

**Exhibit A**
**Page 8 of 44**

Complaint - 8

**ANDERSON | SANTIAGO**
207B SUNSET BLVD. N.
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

1    Respectfully submitted this 20th day of June, 2024.

2

3                                    **ANDERSON SANTIAGO, PLLC**

4                                     By:_____
                                     T. Tyler Santiago, WSBA No. 46004
5                                     Jason D. Anderson, WSBA No. 38014
                                     Attorneys for Plaintiff
6                                     207B Sunset Blvd. N.
                                     Renton, WA 98065
7                                     (206) 395-2665
                                     (206) 395-2719 (fax)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Complaint - 9

**ANDERSON | SANTIAGO**
207B SUNSET BLVD. N.
RENTON, WA 98057
(206) 395-2665/F (206) 395-2719

# EXHIBIT A



**National Credit Systems, Inc**
P.O. Box 672288 MARIETTA, GA 30006
Phone: (404) 629-2728 Toll Free: (800) 459-1539

DEPT 855    4481227524028
PO BOX 4115
CONCORD CA 94524

ADDRESS SERVICE REQUESTED

Client Account Number: ███218
Account Number: ███535

JOSUE MIRON GONZALEZ
2825 MCCORKLE RD SE
OLYMPIA WA 98501-9401

NATIONAL CREDIT SYSTEMS, INC.
PO BOX 672288
MARIETTA GA 30006

*** Detach Upper Portion And Return With Payment ***    February 7, 2024

Client: PRAIRIE VIEW / CASCADE / ███218
Client Account Number: ███218
Account Number: ███535
NCS Default Password (for website): ████
Balance: $16296.00
Resolution Offer: $4,888.80    ***30.00% DEBT DISCOUNT OFFER***

National Credit Systems, Inc. has been authorized by its client to extend a special opportunity to resolve the above referenced account. This offer is valid as of the time of receipt of this letter until 2/29/2024, and we are not obligated to renew this opportunity.

You may satisfy your debt in full at a 30.00% discount if you pay by 2/29/2024.

If you are using money from a tax refund to resolve this debt, we understand there may be a delay in receiving your funds from the IRS. If this applies to you, contact us before the expiration date mentioned above, and we may extend this special into the month of **March**.

Most people find it easiest to pay through our website, www.nationalcreditsystems.com. You simply click on the green 'Resolve My Debt' button located in the upper right corner of the homepage, login using your Account Number and NCS Default Password provide in this letter, select 'Payments', and then the green 'Settle Your Debt' option.

We encourage you to take advantage of this generous offer, realize a very significant savings, and resolve your debt once-and-for-all. NCS will appropriately update any information it may have submitted to the credit bureaus regarding this debt.

Sincerely,

KHALEELAH MCELROY
Collection Representative
Direct Line: 404-214-4988  888-271-1496

Use QR code to gain immediate access for payment.
www.nationalcreditsystems.com

Please direct all correspondence to:
NATIONAL CREDIT SYSTEMS, INC., PO Box 672288 Marietta, GA 30006

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

ATL6-0206-2014612291-00772-772

# EXHIBIT B

On Tuesday, February 20, 2024, 12:01 PM, Prairie View - Leasing <prairieview@cascade-management.com> wrote:

Hello Ashlee,

I spoke with Claudia and she gave me permission to speak with you.

Just to recap our earlier conversation, I spoke with our accountant who filed Claudia's collections paperwork and only Claudia's name was on the bill. We do not have any paperwork with Josue's name since 2014. All of our recertification paperwork for everyone in the household only had Claudia's name so I am not sure why Josue is showing up on the collections bill. Unfortunately, we do not update the lease once someone has left the household, we just update the recertification paperwork when the time comes.

I hope this information was helpful and I hope this clears up any confusion.

Have a great day!

Charlee Mok

Assistant Community Manager

**Exhibit A
Page 13 of 44**

12611 NE 99th Street

Vancouver, WA 98682

PrairieView@Cascade-Management.com

p 360-254-8000  f  360-254-8039



www.cascade-management.com

NOTICE: This communication may contain confidential information.  If you are not the intended recipient or believe you may have received this communication in error, please reply to the sender indicating that fact and delete the copy you received.  Do not print, copy, retransmit, disseminate or otherwise use the information.  Thank you.

ADVICE NOTICE: We advise you that you must not construe this communication or any attachment as containing any tax advice, legal advice, development or investment advice. Further, the advice contained in this email is not intended to be used and cannot be used for the purpose of avoiding any federal tax penalties or as legal advice.  Sender provides advice, estimates and content herein based on professional experience and makes no warranties about the effectiveness or accuracy of advice.

2

**Exhibit A**
**Page 14 of 44**

# EXHIBIT C



**National**
**Credit Systems, Inc.**

*P.O. Box 672288 Marietta, GA 30006   (800) 459-1539   (404) 629-2728*
*Monday - Thursday 8:00 a.m. - 7:00 p.m., Friday 8:00 a.m. - 5:00 p.m.*

02/20/2024

Josue Miron Gonzalez
2825 MCCORKLE RD SE
Olympia WA 98501

Current Creditor: PRAIRIE VIEW APTS
Client Account Number: ███218
NCS Account Number: ███5535
NCS Default Password (for website): ██████
Balance: $16,296.00

Enclosed you will find documentation regarding your account.

If a balance is remaining on your account (see above), you may send payment in full to National Credit
Systems, Inc.

Otherwise, you may contact our office immediately at (404) 629-2728.

It is important to know that National Credit Systems, Inc. is a third party debt collection agency
whose efforts are solely on behalf of the current creditor who has previously validated this debt.

Sincerely,

KHALEELAH MCELROY
Collection Representative
404-214-4988
10_E

**This is an attempt to collect a debt and any information obtained will be**
**used for that purpose. This communication is from a debt collector.**

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

**Disclosure for California consumers**:
As required by law, you are hereby notified that a negative credit report reflecting on your credit record may
be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. "The state
Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that,
except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may
not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use
false or misleading statements or call you at work if they know or have reason to know that you may not
receive personal calls at work. For the most part, collectors may not tell another person, other than your
attorney or spouse, about your debt. Collectors may contact another person to confirm your location or
enforce a judgment. For more information about debt collection activities, you may contact the Federal
Trade Commission at 1-877-FTC-HELP or www.ftc.gov <http://www.ftc.gov>."
California License Number = 10800-99

**Exhibit A**
**Page 16 of 44**

**Disclosure for Colorado consumers:**

FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE <HTTPS://COAG.GOV/OFFICE-SECTIONS/CONSUMER-PROTECTION/CONSUMER-CREDIT-UNIT /COLLECTION-AGENCY-REGULATION/>

Local Office:
1776 South Jackson Street, #900,
Denver, CO 80210
720-287-8669
A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

**Disclosure for Massachusetts consumers:**

NOTICE OF IMPORTANT RIGHTS.
YOU HAVE THE RIGHT TO MAKE WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE DEBT COLLECTOR.

**Disclosure for Minnesota consumers:**

This collection agency is licensed by the Minnesota Department of Commerce.

**Dislcosure for North Carolina consumers:**

NORTH CAROLINA DEPARTMENT OF INSURANCE PERMIT NUMBER 119500338.

**Disclosure for Nevada consumers:**

Please note: If you choose to make a payment by credit card, a separate convenience fee may apply. However, other payment options are available that are free of charge.

**Disclosure for New York City consumers:**

NYC Department of Consumer Affairs license 1277208

**Dislcosure for Tennessee consumers:**

This collection agency is licensed by the Collection Service Board of the Department of commerce and Insurance.

**Disclosure for Utah consumers:**

As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. We will not submit a negative credit report to a credit reporting agency about this credit obligation until the expiration of the time period described above.

## LEASE AGREEMENT
## TAX CREDIT AFFORDABLE HOUSING

1.  **THIS AGREEMENT** is between  Prairie View Apartment Homes , through its agent Coast Real Estate Services, (hereafter referred to as Landlord), and  CLAUDIA GONZALEZ, JOSUE MIRON GONZALEZ  (hereafter collectively referred to as Tenant), and establishes the lease by Landlord to Tenant of Apartment Unit number  DD21B in this complex located at  12611 NE 99th Street DD-2 ,  Vancouver WA 98682       in the project commonly know as    Prairie View Apartment Homes .

    Coast Real Estate Services is designated by Landlord as its Management Agent for this property.

2.  **TERM:** The initial term of this Agreement shall be   12    months (not less than six months) and shall begin on   10/13/2012   and, unless extended as herein provided, shall end on   09/30/2013   . Each term of this lease other than the initial month of occupancy shall be a full month, ending on the last day of a month.

3.  **TERMINATION OR RENEWAL:**

    a.   Unless LANDLORD provides TENANT notice of the non-renewal of this Agreement for cause as is provided in the Tax Credit Lease Rider, this lease shall be automatically renewed for successive terms of one month each at the rental payment amount set forth in paragraph 6, below if TENANT chooses not to vacate the premises on or before the ending date specified in Paragraph 3, above.

    b.   Should TENANT elect to vacate at the end of the Lease term, TENANT shall give LANDLORD written notice at least 20 days prior to the end of the month in which TENANT elects to vacate.  If TENANT does not give sufficient notice as required herein, TENANT shall be obligated for the next month's rent in accordance with Washington state law.  For example, Notice of Termination of Tenancy given on or after the 12th of one month would not terminate the tenancy until the end of the following month.

    c.   LANDLORD may terminate this lease at the end of the initial term or a successive term only for cause, as is outlined in the Tax Credit Lease Rider accompanying this Lease Agreement, by giving written notice to TENANT at least 30 days prior to the end of the intended final month of occupancy by TENANT.

    d.   If TENANT vacates the premises prior to the expiration of the initial term of this Agreement or with insufficient notice, TENANT shall remain obligated for the lease payments for the remainder of the lease term, or until the premises have been re-rented, whichever is less.

4.  **RENT PAYMENTS:**  TENANT agrees to pay $475.00  for the initial partial month ending on   10/31/2012     . Thereafter, TENANT agrees to pay rent of $775.00  per month.  Rent Payments shall be due on or before the first day of each month, and shall be made payable to Prairie View Apartment Homes.  All rent payments must be received in the Apartment Complex Manager's Office by the due date and must be in the form of  a personal check, cashier's check or money order.

5.  **UTILITIES:**

    a.   In addition to the rent, TENANT shall pay for ALL public utilities charged against the Apartment EXCEPT the following items checked and initialed by LANDLORD which shall be paid by the LANDLORD:

    □ WATER   _____  Initials □ SEWER  _____  Initials ☑ GARBAGE ____ Initials □ Cable _____  Initials

    □ ELECTRICITY  ____ Initials       □ TELEPHONE  ____  Initials

    b.   For each Utility for which TENANT is obligated to pay the charges, TENANT agrees that within ten (10) days, TENANT shall register with the utility providers to establish an account for payment of the applicable utility.

    c.   Failure to so register or the failure by TENANT to make payment of any utility obligation when due shall be material noncompliance with this Lease Agreement similar to the non-payment of rent and may result in termination of the tenancy of TENANT.

    d. TENANT agrees not to waste or unnecessarily expend any of the utilities furnished by LANDLORD.  Any utility obligation due directly to LANDLORD by TENANT shall be considered additional rent and shall be due and payable on the first day of the month following the presentation of the utility billing statement to TENANT.

6.  **SECURITY DEPOSIT:**

**Exhibit A**
**Page 18 of 44**

1

a.  Prior to initial occupancy, TENANT agrees to pay, a refundable Security/Damage Deposit in the amount of $ 300.00  to secure the performance of TENANT'S obligations as specified in this Agreement.

b.  If, prior to occupancy, TENANT is unable to pay the Security Deposit in full, TENANT may elect to pay 50% of the Security Deposit at the time of initial occupancy and the remaining 50% in (3) equal installments of $ 0.00  , which installments shall be payable on the first day of each month at the time and place of the payment of rent.

c.  This installment payment arrangement for the Security Deposit shall be memorialized in a separate written agreement between the parties.  The breach of that separate Security Deposit Installment Payment Agreement shall be deemed material noncompliance with this Agreement and may result in the termination of the tenancy of TENANT.

d.  The Security Deposit shall be deposited by LANDLORD in a trust account at Regal Bank whose address is Seattle, WA.

e.  If TENANT has complied with all requirements of this Agreement, at the termination of this Agreement, the Security Deposit shall be applied first to any damages repair or cleaning of the Apartment Unit beyond normal wear and tear, second to any rent delinquency or other financial obligation then due and owing to LANDLORD by TENANT and third, any remaining Security Deposit shall be repaid to TENANT within fourteen (14) days of the date TENANT vacates the Apartment Unit and surrenders all keys or other security devices to the Apartment Complex Management, PROVIDED that TENANT:

   i. Shall have fulfilled the term of this Agreement and the below-listed, applicable Addenda.

   ii. Shall return to LANDLORD all keys or other security devices provided during the tenancy.  A charge of $ 5.00  will be assessed for each key not returned by TENANT.  In addition, a lock change charge of $ 25.00  will be charged if any keys are not returned.

   iii. Shall clean and restore the Apartment Unit to the original condition as it existed at the commencement of this tenancy, as evidenced by the Move-In/ Move-Out Checklist signed by TENANT and LANDLORD prior to occupancy, normal wear and tear excepted.  TENANT agrees that soilage, including, but not limited to dirt, pet-related or smoking-related damage, is not considered normal wear and tear.

   iv. Shall have remedied or repaired to LANDLORD'S satisfaction any damage to the premises or furnishings.

f.  If more than one TENANT is obligated under this Lease Agreement, the Security Deposit refund, if any, shall be made payable to all named TENANTS jointly and may be delivered by mail or in person to any of the above-named TENANTS.

g.  Nothing contained herein shall preclude the LANDLORD from pursuit of its remedies to recover sums exceeding the amount of the Security Deposit together with any reasonable attorney's fees or other court costs incurred by LANDLORD in seeking such recovery as is provided by law.

7.  **NON-REFUNDABLE FEE:**  Prior to occupancy, TENANT agrees to pay a non-refundable administrative fee in the amount of $ 0.00  , which shall be in addition to the Security Deposit or any other fee required to reimburse LANDLORD for background investigation of the TENANT at the time of TENANT'S application.  This fee is non-refundable and will not be returned to TENANT under any circumstance.  ___ Initials  ___ Initials  ___ Initials

8.  **LATE CHARGES:**

a.  If the rent, including any applicable utility obligation as additional rent and any Security Deposit installment payment then due, is not received by the close of business on the fifth (5th) day of each month, TENANT shall be obligated to pay an additional late charge of $ 50.00  in addition to the full amount of the rent and any additional rent or Security Deposit installment payment, plus an additional $ 5.00  per day late charge from and after the 6th of the month until the rent, including any additional rent and any Security Deposit installment payment due are paid in full.

b.  In addition, should TENANT make payment by a personal check or other instrument that is returned by the payee bank for any reason, there will be an additional $ 50.00 charge for such additional processing and the above Late Charges will be immediately imposed from and after the 6th of the month of payment until the insufficient funds check is redeemed by payment using a certified check, cashier's check or money order only.  Thereafter, no personal checks for rent, additional rent or Security Deposit installment payment will be accepted from TENANT.

**Exhibit A**

9. **PERMANENT OCCUPANCY AND GUESTS:**

a.  TENANT shall occupy the Apartment Unit as TENANT'S primary residence.  TENANT must notify LANDLORD in writing of any extended absence in excess of two (2) weeks.  If TENANT fails to personally reside in the Apartment Unit for a period exceeding sixty (60) consecutive days for reasons other than health or emergency, may result in termination of the tenancy of TENANT for cause.

b.  TENANT shall not assign this Agreement, sublet the Apartment Unit or any portion thereof, give accommodation to any roomers or lodgers, or permit the use or occupancy as a residence of the premises for any persons other than the above-listed TENANT(S) and their minor dependents:

CLAUDIA GONZALEZ, JOSUE MIRON GONZALEZ                                                                    .

c.  TENANT may conduct a personal business of TENANT in the Apartment Unit provided such business operation does not change the use of the premises from residential to commercial use or involve excess use of any LANDLORD supplied utility (more than 110% of median TENANT use).

d.  TENANT shall not allow any guests to occupy the Apartment Unit as a residence for more than fourteen (14) days in a six-month period without the prior written permission of LANDLORD.  Any guest residing more than fourteen (14) days in a six-month period shall be considered an unauthorized occupant and, upon notice from the LANDLORD to comply with the requirements of this Paragraph, if TENANT fails to remove the unauthorized occupant, such failure to act shall be material noncompliance with this Agreement and may result in termination of the tenancy of TENANT. If TENANT desires to add a person to this Agreement, that person must complete an application process and meet all eligibility requirements prior to occupancy.  During the initial lease period set forth in Paragraph 2, above, no additional adult household members may be added to the lease.

10. **ACCEPTANCE OF APARTMENT UNIT CONDITION:**  By execution of this Agreement, TENANT agrees to thoroughly inspect the dwelling upon occupancy and within three (3) business days to report to LANDLORD any condition of the Apartment Unit that varies from the condition noted in the Move-In/Move-Out Inspection Report. Absent such report, TENANT confirms and agrees that the premises are in a habitable condition.  Notations contained in the Move-In/Move-Out Checklist and any written report submitted by TENANT to LANDLORD within three (3) days of occupancy shall be the basis upon which any charges, described in Paragraph 6, above, will be made at the time of surrender of the Apartment Unit by TENANT.

11. **RENTER'S INSURANCE:**  TENANT is encouraged to obtain Renter's Insurance.  It remains TENANT'S choice whether to obtain renter's insurance covering TENANT's personal property in the Apartment Unit.  All personal property in the Apartment Unit and any designated storage areas shall be maintained by TENANT <u>at the risk of the TENANT</u>.  LANDLORD shall not be liable for loss or damage to the personal belongings of TENANT absent negligence for which LANDLORD is legally responsible.  ___ Initials _____ Initials _____ Initials .
___ Initials

12. **CARBON MONOXIDE DETECTOR AND SMOKE DETECTOR MAINTENANCE:**

a.  TENANT acknowledges that the Apartment Unit is equipped with both a Carbon Monoxide detector and a smoke detector.  TENANT also acknowledges it is TENANT's responsibility to maintain these two detectors, including the replacement of batteries if required, during the term of this Agreement.

b.  Failure to properly maintain the smoke detector can result in punishment, including a fine of not more than $200.00 pursuant to <u>RCW 43.44.110</u>.

c.  Failure by TENANT to maintain both the Carbon Monoxide detector and the smoke detector in good working order shall constitute material noncompliance with this Agreement and may result in the termination of the tenancy of TENANT.

13. **VEHICLES:**

a.  At the initial occupancy, TENANT will be advised as to any restrictions on parking in the Apartment Complex parking areas.  TENANT or guests of TENANT may not park other than in the designated parking areas.  Blocking other tenant vehicles, parking in fire lanes, designated delivery spaces or other restricted parking areas may result in immediate removal of offending vehicles.  Upon proper notice, LANDLORD may remove any vehicle from any fire lane, restricted parking area, unassigned or assigned parking space or carport which in LANDLORD'S opinion is parked illegally or in violation of the parking restrictions.

b.  TENANT shall not allow any inoperable or unlicensed vehicle to remain on the premises for more than twenty-four (24) hours.  Additionally, LANDLORD may, upon proper notice, remove any vehicle which remains inoperable for a period of more than twenty-four (24) hours or any vehicle with expired license tabs. **Exhibit A**
**Page 20 of 44**

3

c.    TENANT may not perform any automotive maintenance on the Apartment Complex premises.

d.    TENANT shall not store any recreational vehicle, boat, trailer, furniture, appliances or any other property in any of the Apartment Complex parking spaces or other areas within the Apartment Complex grounds without the prior <u>written</u> consent of LANDLORD.

14. **MAINTENANCE:** TENANT shall maintain the Apartment, including furnishings, appliances, floor covering and draperies/blinds in a clean and sanitary condition. TENANT shall also maintain any adjoining entry, patio, or lanai uncluttered and in a clean and sanitary condition.

15. **DAMAGES OR REPAIRS.** TENANT is responsible for any the actions, activities and damages caused to the premises by TENANT or any member of TENANT's family, guests, invitees, or business invitees. Within thirty (30) days of the presentation of a billing by LANDLORD, TENANT shall pay as additional rent the cost of repair of all damages or repairs caused to the premises by such persons or by TENANT.

16. **STORAGE:** No storage of personal belongings or furnishings will be permitted on patios, decks or public areas. Such areas of the Apartment Unit must be maintained in a clean and orderly condition, within which authorized items must not block any entrance or exit (ingress or egress).

17. **ALTERATIONS PROHIBITED:**

a.    Without the prior <u>written</u> consent of the LANDLORD, which consent will not be unreasonably withheld, TENANT shall make no alteration, addition, or improvements in, on or to the Apartment Unit premises, including, but not limited to:
    (1). changing or removing any part of the appliances, fixtures or equipment in the Apartment Unit;
    (2). painting or installing wallpaper or contact paper in the Apartment Unit;
    (3). removing drapes or blinds or installing any other window covering;
    (4). attaching awnings or window guards in the unit;
    (5). attaching or placing any fixtures, signs, or fences on the Apartment Unit or the Apartment Complex common
         areas;
    (6). attaching any shelves, screen doors, or other permanent improvements in the Apartment Unit;
    (7). installing washing machines, dryers, freezers, fans, heaters or air conditioners; or
    (8). placing any aerials, antennas, satellite dishes or other electrical connections on the unit.

18. **REPAIRS AND IMPROVEMENTS:**

a.    Except as required by law, LANDLORD shall have the right, but not the obligation, to make alterations, repairs and improvements to the premises and contents furnished by LANDLORD. For that purpose, equipment may be turned off and utilities may be interrupted temporarily to the Apartment Unit of TENANT.

b.    In the event that the premises occupied by TENANT are damaged or destroyed by fire or other casualty or are taken by eminent domain such that the Apartment Unit is rendered unfit for use as a dwelling, the LANDLORD shall have the right to terminate this Lease Agreement upon thirty (30) days written notice to TENANT.

c.    TENANT shall repair, at TENANT'S sole cost and expense, any damage to the Apartment unit and its appurtenances caused by the negligent or intentional acts or omissions to act of TENANT or any of TENANT'S family members, guests, invitees, licensees, or others acting under TENANT'S control, including business invitees. Such repairs shall be commenced within thirty (30) days of receipt of written notice from LANDLORD requiring such repairs, or within a shorter period of not less than ten (10) days if such repairs are made necessary by an emergency and prosecuted to completion in a workmanlike professional manner. LANDLORD reserves the right to approve any repairman, mechanic or contractor conducting such repairs.

19. **ACCESS:** TENANT shall allow LANDLORD access to the Apartment Unit at all reasonable times for the purpose of inspection, repairs or improvements, or to show the Apartment Unit to prospective Tenants, prospective purchasers/mortgagees of the Apartment Complex, workers, or contractors. LANDLORD shall provide TENANT not less than twenty-four (24) hours prior notice of LANDLORD'S intention to enter the Apartment Unit. TENANT agrees that in case of emergency, LANDLORD may enter the apartment without providing such prior notice and without the prior consent of the TENANT.

20. **ABANDONMENT OF APARTMENT UNIT:** As is provided in <u>RCW 59.18.310</u>, in the event of default in the payment of rent by TENANT and the accompanying abandonment of the Apartment Unit, the LANDLORD, after two days written notice of intention to enter to verify abandonment without response from TENANT, may immediately enter and take possession of any property of the TENANT found on the premises and may store the same in any reasonably secure place. A notice containing the name and address of the LANDLORD, the place where the property is stored, and a prospective sale date of such property shall be mailed promptly by the LANDLORD to the last known

4

address of TENANT. After the period required by law, the LANDLORD may sell such abandoned property of TENANT, including personal papers, family pictures and keepsakes, and may apply any income derived therefrom against monies due the LANDLORD, including actual cost of collecting the property for storage and storage of such property of the TENANT.

21. **APARTMENT UNIT ACCESSIBLE FOR INDIVIDUALS WITH DISABILITIES:**

If the Apartment Unit occupied by TENANT is equipped with design features for an individual with a disability and neither TENANT nor a member of TENANT'S household has a disability, TENANT agrees that upon thirty (30) days written notice from LANDLORD that TENANT will relocate at TENANT'S sole expense to another apartment unit of approximately equal size within the Apartment Complex to afford priority to those in need of the design features of this Apartment Unit. TENANT acknowledges that under Tax Credit affordable housing regulations such relocation may result in an adjustment in the monthly rent obligation if the relocation apartment unit has a different percentage of the area median income of the county in which the Apartment Complex is located.

_____ Initials _____ Initials

22. **ANIMALS PROHIBITED:** TENANT shall not board, harbor or keep animals of any kind in or about the Apartment Unit, either as owned pets for TENANT or as the pets of others without the prior written consent of LANDLORD, which consent, if any, will be conditioned on TENANT executing a Pet Addendum to this Agreement and paying any required additional Security Deposit (no Pet Addendum shall be required in instances of reasonable accommodation of a legitimate medical condition or disability. In such cases, TENANT shall be required to agree to comply with the rules applicable to pets contained in the Pet Addendum as to cleanliness, noise and interference with the quiet enjoyment of other Tenants).

23. **RULES & REGULATIONS:** The Rules and Regulations accompanying this Agreement are a binding part of this Agreement and are incorporated herein by reference. TENANT agrees to abide by these Rules and Regulations, and further agrees that upon thirty (30) days written notice for month-to-month tenants or at the end of the lease term of six-months or one-year tenancies, LANDLORD may make such changes or additions to the Rules and Regulations as are deemed necessary, including increases or decreases in the amount of the monthly rent. As this Apartment Complex includes Tax Credit Affordable Housing, the monthly rent obligation may adjust when the allowable rent for the Apartment Unit is adjusted due to an adjustment in the area median income for the household composition of TENANT (as published on an annual basis by the United States Department of Housing and Urban Development (HUD) and the Washington State Housing Finance Commission (WSHFC)).

24. **GOVERNMENTAL REGULATIONS:** TENANT shall comply with all laws, ordinances and governmental regulations applicable to the Apartment Unit, the non-compliance with which, if criminal in nature, may result in the termination of the tenancy of TENANT in accordance with the Crime Free / Drug Free Policy attached as an Addendum hereto. Similarly, TENANT agrees not to interfere with, delay or prevent the conduct of the performance of their professional responsibilities by the management of the Apartment Complex.

25. **ATTORNEY'S FEES:** In any dispute, arbitration, or litigation arising from this Agreement, its Rules and Regulations, its Addenda or any other agreement between the parties incorporated in this Agreement by reference, the prevailing party shall be entitled to payment by the other party of the prevailing party's costs, expenses, and reasonable attorney's fees, including those incurred on any appeal therefrom.

26. **INCOME CERTIFICATION:**

a.   The Affordable Housing Tax Credit Program and other government agency housing programs require initial certification and annual recertification by each Tenant. TENANT agrees that annually, or more frequently if TENANT'S household composition changes, and in a timely manner when requested by LANDLORD, TENANT shall complete and return to LANDLORD within the time frame requested by LANDLORD the approved certification documentation supplied to TENANT by LANDLORD. NOTE: <u>Each information component of the TENANT Application and income certification supplied by TENANT is material to the initial and continuing eligibility of TENANT to occupy Tax Credit affordable housing. Any misrepresentation of information constitutes material noncompliance with and a material breach of this Agreement and may result in termination of the tenancy of TENANT.</u> _____ Initials _____ Initials

b. Abandonment of the premises or termination of the lease for breach of the certification or recertification requirements will not release TENANT from the financial obligation to pay any future rent payments as provided in this Agreement.

c. TENANT agrees that annually and not less than forty-five (45) days prior to the household's annual recertification date, TENANT will submit to LANDLORD all documentation required by LANDLORD necessary to self-certify or to

verify with appropriate third parties whether TENANT'S household remains qualified to occupy Tax Credit affordable housing.

d. TENANT acknowledges that the allowable rent for the Apartment Unit is based upon the area median income for the household composition of TENANT as is determined and published on an annual basis by the United States Department of Housing and Urban Development (HUD) and the Washington State Housing Finance Commission (WSHFC). LANDLORD reserves the right to increase the rent obligation of TENANT under this Agreement at the time the annual allowable rents are published by HUD or at the time of any adjustment in the utility allowance by HUD or WSHFC as is provided by applicable regulations of the Internal Revenue Service. A Notice of Increase of Rent Obligation shall be provided to TENANT at least thirty (30) days in advance of any increased rent payment due date. All such rental increases will not exceed the maximum Tax Credit affordable housing allowable rent for the applicable unit size and household composition.

e.   As the Tax Credit affordable housing program provides for specific qualification restrictions with respect to occupancy of apartments by full-time students, TENANT agrees to notify LANDLORD immediately of any change in student status by any member of TENANT'S household. If, due to the full time student status of TENANT or a member of TENANT'S household, or if the TENANT no longer complies with the income requirements for occupancy in Tax Credit housing, TENANT agrees to vacate the premises within thirty (30) days of the receipt of written notice of such noncompliance from LANDLORD or the expiration of any appeal period for any proceeding arising from such notice.

f.   TENANT agrees not to add any adult members to the household of TENANT during the initial term set forth above in Paragraph 2 of this Agreement without prior written authorization from LANDLORD. Any such addition of an unauthorized adult occupant will be considered material noncompliance with the Lease Agreement and may jeopardize the tenancy of TENANT.

27. **TERMINATION OF TENANCY BY LANDLORD:**

a. Any termination of this Agreement by the LANDLORD must be carried out in accordance with state and local law, and the terms of this Agreement. Pursuant to the Tax Credit Lease Rider attached hereto and incorporated herein by reference, such termination may only be for good cause.

b. LANDLORD may terminate this agreement for the following reasons which shall be good cause:
    (1) TENANT'S material noncompliance with the terms of this Agreement;
    (2) TENANT'S material failure to carry out the obligations of a Tenant under the Washington State Landlord - Tenant Act, RCW 59.18;
    (3) TENANT'S drug related criminal activity engaged in, on or near the premises by TENANT or any of TENANT'S family members, guests, or others acting under TENANT'S control;
    (4) A determination made by LANDLORD that a household member is illegally using a drug;
    (5) A determination made by LANDLORD that a pattern of illegal use of a drug interferes with the health, safety, or right to peaceful enjoyment of the premises by other tenants;
    (6) Any criminal activity by TENANT or any of TENANT'S family members, guests or others acting under TENANT'S control;
        a) that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants (including property management staff residing on the premises); or
        b) that threatens the health, safety, or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the apartment complex premises;
    (7) If TENANT is fleeing to avoid prosecution, or custody or confinement after conviction, or for a crime, or attempt to commit a crime, that is a felony under the laws of the place from which the TENANT is fleeing;;
    (8) If TENANT is violating a condition of probation or parole under Federal or State law;
    (9) A determination made by LANDLORD that a household member's abuse or pattern of abuse of alcohol threatens the health, safety, or right to peaceful enjoyment of the their residence by other tenants; OR
    (10) A determination by LANDLORD that TENANT or any of TENANT'S family members, guests or others acting under TENANT'S control have engaged in criminal activity, regardless of whether TENANT, any member of TENANT'S household, a guest or other person under the TENANT'S control has been arrested or convicted of such activity.

c.   LANDLORD may also terminate this Agreement for "other good cause," which includes, but is not limited to, TENANT'S refusal to accept the LANDLORD's proposed change to this Agreement. Termination for "other good cause" may only be effective as of the end of any initial or successive term.

d. The term "material noncompliance" includes, but is not necessarily limited to;

    (1) one or more substantial violations of the lease;

**Exhibit A**
**Page 23 of 44**

    (2) assigning or subletting any portion of the premises or allowing unauthorized adult
        occupants to reside therein;

    (3) repeated minor violations of the lease that:

        a) disrupt the livability of the project,

        b) adversely affect the health or safety of any person or the right of any tenant to the
          quiet enjoyment of the lease premises and related facilities,

        c) interfere with the management of the project, or

        d) have an adverse financial effect on the project;

    (4) failure of TENANT to timely supply all required information on the income and composition, or
        eligibility factors of TENANT'S household (including, but not limited to, failure to meet the disclosure
        and verification requirements for Social Security Numbers, or failure to sign or submit consent forms for
        the obtaining of wage and claim information from any State Wage Information  Collection Agencies), or
        to knowingly provide incomplete or inaccurate information; and

    (5)  non-payment of rent or any other financial obligation due under the lease beyond any
        grace period permitted under state law.  The payment of rent or any other financial obligation under the
        lease after the due date but within the grace period permitted under state law constitutes a minor
        violation.

28. **NON-WAIVER OF LEASE PROVISIONS:** Failure by LANDLORD to enforce any provision of this agreement
shall not be construed as, nor shall it constitute, a waiver of the LANDLORD'S right to enforce such provision in the
event of subsequent or continuing defaults by the TENANT.

29. **GRIEVANCE PROCEDURE:** LANDLORD has made available to each TENANT a written procedure for the
resolution of disputes arising out of this agreement or the occupancy of the premises by TENANT.  This Grievance
Procedure establishes the right of the TENANT to a hearing on issues related to occupancy and the appeal of any
decision of LANDLORD regarding the occupancy of TENANT, including notices of termination and eviction.  A
copy of that procedure accompanies this agreement as is set forth in paragraph 29, below.

30. **ADDENDA AND MODIFICATIONS TO THIS AGREEMENT:**

a. The following checked designated forms and attachments constitute addenda to this Agreement, establish additional
rights and responsibilities for TENANT and LANDLORD, and are incorporated in this Agreement by reference:

| | |
|---|---|
| ☐ Move-In/Move-Out Checklist | ☒ Rules and Regulations |
| ☐ Mold Agreement | ☒ Crime Free/Drug Free Policy |
| ☐ Fire Emergency Guide | ☐ Grievance Procedure |
| ☐ Parking and Storage Addendum | ☒ Tax Credit Lease Rider |
| ☐ Satellite Dish and Antenna Guidelines | ☐ _____ |
| ☐ Utility Addendum | ☐ _____ |
| ☒ Pet Addendum | ☐ _____ |
| ☐ Lead Based Paint Booklet | ☐ _____ |

This Agreement may not be modified by the parties except by a separate writing executed by each party hereto.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement.  By signing below TENANT
acknowledges they have read and understand this Agreement and that a copy of this Agreement, as signed by all
parties, has been furnished to each TENANT below signing.

_(TENANT)_     Date 10/13/12         _(TENANT)_     Date 13/10/12

_(LANDLORD/Agent)_     Date 10/13/12

**Exhibit A**
**Page 24 of 44**

# COMMUNITY POLICIES



Apartment Number : __DD218__

Address:  __12611 NE 99th Street DD-218__    , __Vancouver WA 98682__

Resident(s):  __CLAUDIA GONZALEZ, JOSUE MIRON GONZALEZ__

This document is an addendum to the lease signed by the above resident for the above referenced apartment and community.

Rent is due on the **1st** of every month. If the TOTAL monthly is not paid by the **5th** day of the month, a late fee of __50.00__ plus a charge of $__5.00__ per day shall be levied until the balance is paid in full.

$__50.00__ handling fee, an accrued late charge will be collected on any returned check. If Resident gives Manager two checks that are returned for non-payment during the term of the Lease, then future rent payments shall only be made by cashier's check or money order.

1. Insurance coverage maintained by the Manager does not protect Residents from loss of personal property, including, but not limited to, vehicles by theft, fire, water damage, etc. Each Resident is advised to obtain a policy of Renters Insurance.

2. Limit your speed within the community to 5 m.p.h. your community may have limitations for riding bikes and motorcycles on community grounds. To make certain you are not in violation of the limitations, please check with your Community Manager.

3. Unsightly cars (with flats, broken windows, etc.), RV's, boats, and vehicles without current registration are not permitted on the premises and will be towed (with lawful notice) at owner's expense. Vehicle repair on premise is not permitted. Residents must wash their cars on the property only if the property provides an area designated as such.

4. Do not hang items from balconies or windows. Keep patios orderly at all times. Window coverings visible from the exterior of apartment are not permitted unless approved by management.

5. Equipment in bathrooms and kitchens shall not be used for any purposes other than those for which they were constructed. Resident shall be held responsible for any repairs or damage resulting from the misuse of such equipment.

6. Please be considerate of your neighbor. Residents are requested to control the volume of stereos, TV's and musical devices within the apartments to the extent that they do not disturb Residents of other apartments. Noisy or disorderly conduct annoying or disturbing Residents will NOT be permitted. Quiet hours are **from 10 pm to 8 am**.

7. Residents are responsible for the actions and conduct of their guests at all times while on the premises. Residents shall be responsible for their guests' compliance of all rules and regulations, and all applicable stipulations of the Lease or Rental Agreement.

8. Skateboards, motorcycles, bicycles and similar vehicles may not be stored in entryways or under stairs.

9. There is to be no use of the premises to conduct any commercial activity or services for compensation in or about the community without prior written consent of landlord.

10. Locks are not to be changed without prior consent of landlord.

11. Resident acknowledges receipt of a copy of the parking agreements for the community and agrees that all Residents and guests will abide by them without fail.

12. No animals or pets of any kind shall be kept or harbored in or about the apartment community without written permission of the Owner or Agent, (except for medical reasons). If pets are allowed on the premises, then the Tenant and their invitees will be subject to the rules and regulations set forth in the Owner's Pet Policy, the provisions of which are incorporated herein by reference.

13. No person shall play, loiter, or run in public halls, stairways, elevators, sidewalks, landscaping beds, garages, garbage containers and/or parking areas.

14. No bicycles, skateboards, other cycles or wheeled toys, or other personal effects shall be allowed in halls, stairways, elevators, laundry rooms, driveways or other public areas, except specifically designated areas. No packages, boxes, etc., will be allowed -to obstruct halls, stairs, balconies, patios, entry ways, etc.

**Exhibit A**
**Page 25 of 44**

15. No wires, aerials, antennas f... ...dio or television wires, ropes, etc., for clothes-... g, etc., shall be installed on the roof, decks, or other parts of the building without written permission of the Owner or Agent.

16. All leaking faucets, toilets, windows, fireplaces, and/or defects or potential defects in the Apartment or appliances not in good working order shall be reported in writing promptly to the Owner or Agent.

17. All wet garbage shall be wrapped and boxes shall be crushed before placing in the garbage/recycle containers. No furniture please! Garbage must be placed into and fit into the garbage containers.

18. Exterior window sills and ledges shall not be used for storage of bottles, food, etc.

19. Dust mops, rugs, table cloths, and clothing shall not be shaken, cleaned or left in any of the public areas or any window, door, deck or landing.

20. Tenant, family, and guest(s) shall have due regard for the peace, comfort and enjoyment of other tenants at the property. Musical instruments, radios, television sets, record players, vacuum cleaners, etc., shall be used only during reasonable hours, normally 8:00 am to 10:00 pm, and at a reasonable volume.

21. No venetian blinds, awnings, draw shades or non-conforming curtains or drapes shall be installed on exterior windows, without written permission of the Owner or Agent.

22. No nails, screws, tacks, double-back tape etc., shall be used without consent of the Owner or Agent. Use only picture hooks to hang pictures, mirrors and decorative items on the walls.

23. No signs or placards shall be posted in or about the apartment building without written permission of the Owner or Agent.

24. Toilets, sinks and washbasins are to be used only for the purposes for which they were intended and no dust, rubbish, coffee grounds, disposable diapers and feminine hygiene products, aquarium gravel, etc., are to be put into same. Any extraction of these items from plumbing system will be billed to the Tenant.

25. Tenants are not permitted access to the roof except in case of emergency.

26. The laundry and its facilities shall be used only for washing and drying of the usual personal and household articles. No cleaning with flammable materials or dying of clothes in washing machines will be permitted.

27. No person will be allowed to enter an apartment without written authorization. Residents under the age of 18 locked out of apartments will not be allowed into apartments unless parents pre-approve entry.

28. Nothing is to be hung on the exterior of the building, or on the patios or balconies, including wind chimes, sunshades, etc. No pots or plants are allowed on patio or balcony railings. Because of the danger of fire, residents are not to store or keep highly combustible items, such as gasoline, on the premises.

29. All combustible items (furniture, clothing, bedding, papers, etc.) must be kept twelve (12) inches away from apartment heaters at all times.

30. All cars must be registered with the Community Manager. If you have not registered your car or if you change cars during residency, please contact the Community Manager to have it properly registered. Boats and trailers are prohibited on community property. NO washing of cars is permitted on the property unless property has a designated area. The speed limit on the property is 5 mph or less.

31. Any person locked out of their apartment after hours must call a locksmith at their own expense or incur a lock out fee. Changing dead-bolts and door locks is expressly forbidden without written notification of management. Management must be able to enter apartments in case of emergency. There is a fee for door lock changes by management.

Rules and regulations are subject to change. Tenant will be given 30 days advance written notice when said changes are made.

I have read and understand the above written rules and regulations and agree to comply with all written rules and regulations as an addendum to my Rental Agreement/ Lease:

| Resident | 10/13/12 Date | Resident | 10/13/12 Date |
|---|---|---|---|
| Resident | 10/13/12 Date | Resident | Date |
| (Owner / Agent) | Date | | |



# CRIME FREE HOUSING ATTACHMENT

Apartment Number: DD218

Address: 12611 NE 99th Street, Vancouver WA 98682

Resident(s): CLAUDIA GONZALEZ, JOSUE MIRON GONZALEZ

This Attachment is incorporated into and shall become a part of the Rental/Lease Agreement dated 10/13/2012 by and between Coast Real Estate Services as duly authorized management agent for the apartment community known as Prairie View Apartment Homes , and

(Residents) CLAUDIA GONZALEZ, JOSUE MIRON GONZALEZ:

1. Resident, any member of the resident's household, or a guest or other person under the resident's control shall not engage in criminal activity nor engage in any act intended to facilitate criminal activity, including drug-related criminal activity, at any location, whether on or near project premises or otherwise. "Drug related criminal activity" means the illegal manufacture, sale, distribution, use, storage, keeping, or possession with intent to manufacture, sell, distribute or use, of a controlled substance (as defined in section 102 of the Controlled Substances Act 21 U.S.C. 802).

2. Resident or members of the household will not permit the dwelling unit to be used for, or to facilitate, criminal activity, including drug related criminal activity, regardless of whether the individual engaging in such activity is a member of the household or is a guest. Other activity prohibited by the Landlord Tenant Act RCW59.18 is also not permitted.

3. Resident, any member of the resident's household, or a guest or other person under the resident's control shall not engage in any illegal activity, including prostitution, criminal street gang activity, threatening or intimidating assault, acts of violence or threats of violence, including, but not limited to, the unlawful discharge of firearms, on or near property premises or any breach of the Rental/Lease Agreement that otherwise jeopardizes the health, safety and welfare of the Landlord, his agent(s) or other resident or involving serious property damage.

4. VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL VIOLATION OF THE RENTAL/LEASE AGREEMENT AND GOOD CAUSE FOR TERMINATION OF RESIDENCY. A single violation of any of the provisions of this amendment shall be deemed a serious violation and a material and irreparable noncompliance and shall be good cause for immediate termination of the Rental/Lease Agreement. Unless otherwise provided by law, proof of violation shall not require criminal conviction, but shall be by a preponderance of evidence.

5. In case of conflict between the provisions of this Amendment and any other provisions of the lease, the provisions of the Amendment shall govern.

| Resident CLAUDIA GONZALEZ | 10/13/12 Date | Resident JOSUE MIRON GONZALEZ | 10/13/12 Date |

| Resident | Date | Resident | Date |

Owner/Agent        10/13/2012 Date





# MOLD AND MILDEW AGREEMENT

Property: Prairie View Apartment Homes

Date: 10/13/2012

BETWEEN Resident(s): CLAUDIA GONZALEZ, JOSUE MIRON GONZALEZ
And Owner/Agent: Prairie View Apartment Homes

Resident acknowledges that mold can grow if the premises are not properly maintained or ventilated. If moisture is allowed to accumulate in the resident's apartment, storage, or other rented areas, mildew and mold can grow. It is important for the resident to keep these areas clean and to promptly notify the Owner/Agent of any leaks, moisture problems, and/or mold growth.

Resident agrees to maintain the premises in a manner that prevents the occurrence of an infestation of mold or mildew in the premises. Resident agrees to uphold this responsibility in part by complying with the following list of responsibilities:

1.  Resident agrees to keep the apartment free of dirt and debris that can harbor mold.

2.  Resident agrees to immediately report to the Owner/Agent any water intrusion, such as plumbing leaks, drips, or "sweating" pipes.

3.  Resident agrees to immediately notify owner of overflows from bathroom, kitchen, or unit laundry facilities, especially in cases where the overflow may have permeated walls or cabinets.

4.  Resident agrees to immediately notify the Owner/Agent in writing of any significant mildew or mold growth on surfaces in the apartment.

5.  Resident agrees to allow the Owner/Agent to enter the unit to inspect for mold and make necessary repairs.

6.  Resident agrees to use bathroom exhaust fans while showering or bathing and use exhaust fans whenever cooking, dishwashing, or cleaning. If the apartment is equipped with an automatic apartment ventilation fan, Resident agrees to not disable or otherwise adjust the fan settings. Resident also agrees to report to the Owner/Agent any non-working fans.

7.  Resident understands that mold can grow on damp surfaces within 24 to 48 hours and agrees to clean and dry any visible moisture on windows, walls, and other surfaces, including personal property, as soon as reasonably possible.

8.  Resident agrees to notify the Owner/Agent of any problems with the heating, ventilating, and/or air conditioning systems.

9.  Resident agrees to indemnify and hold harmless the Owner/Agent, including Coast Real Estate Services, from any actions, claims, losses, damages, and expenses, including, but not limited to, attorney's fees that the Owner/Agent may sustain or incur as a result of the negligence of the Resident, including failure to abide by this agreement, or any other person living in, occupying, or using the premises.

Resident  CLAUDIA GONZALEZ        Date 10/13/12        Resident  JOSUE MIRON GONZALEZ        Date 10/13/12.

Resident        Date        Resident        Date

Owner/Agent    Date 10/13/12



**Exhibit A**
**Page 28 of 44**

# PACKAGE ACCEPTANCE LIABILITY RELEASE FORM



Tenant(s): CLAUDIA GONZALEZ, JOSUE MIRON GONZALEZ

Unit: DD218

Property Address: 12611 NE 99th Street, Vancouver WA 98682

I/We CLAUDIA GONZALEZ, JOSUE MIRON GONZALEZ _____, the
occupant(s) of apartment # DD218 , agree and understand that packages accepted and signed for by
Prairie View Apartment Homes _____ staff are accepted only as a courtesy.

I/We will not hold Prairie View Apartment Homes _____ or **Coast Real Estate Services** liable for packages
if they are damaged, lost or stolen. A package notice must be presented to the office staff prior to picking up and signed out for
your package.

Resident CLAUDIA GONZALEZ          10/13/12 Date

Resident  JOSUE MIRON GONZALEZ          10/13/12. Date

Resident          Date

Owner/Agent          10/13/12 Date

# STORED PRODUCT PESTS



**SECONDARY PESTS.**

These feed on food materials which are in poor condition, usually damp and/or have some mold growth present. Examples include the yellow mealworm, the dark mealworm, etc.

Refer to the individual species treatment for details.

**CONTROL.**

Stored product pest control is a 6-step process.

1. **PREVENTION.**   This consists of inspecting all incoming items for stored product pests making sure that the building is in good physical condition to reduce entry. and that there is adequate ventilation.

2. **GOOD SANITATION.**   Such practices consist of the timely removal of all spilled commodity, the immediate removal and/or treatment of any infested commodity, and proper grounds maintenance to reduce sources of pests and attractiveness to pets.

3. **PROPER STORAGE.**   This usually consists of having all items up on pallets. That the pallets be at least 18" away from the wall to allow for proper inspection ;and treatment, that all torn bags are repaired or replaced, etc.

4. **STOCK ROTATION.**   The rotation of food stock with nonfood stock and the rotation out of the oldest stock first of a given commodity both help to prevent infestation coming from infested old commodity or unremoved debris.

5. **VENTILATION.**   This is important to reduce or keep the food moisture content low: for example mites require at least a 12% food moisture content.

6. **CONTROL.**   Finally, some kind of control Is often required. Control is based on the correct identification of any pests found during the above listed activities or during periodic inspections.

In milling or processing plants, the installation of mechanical or peat destruction devices such as insect light traps or electrocutors are advisable. In addition, either spot fumigation or fumigation of the entire structure is usually required periodically. In warehouses, control of stored product pests sometimes requires fumigation. In both processing and warehousing facilities, the routine use of synergized pyrethrin ULV applications will temporarily reduce the exposed adult population, but will not solve or control the infestation because most of it is composed of unexposed immature stages. Such applications should be timed with the pest's flight or exposed activity period for maximum effectiveness.

In processing plants, warehouses, and retail stores, the use of insect pheromone and/or baited monitoring devices is extremely useful for detecting infestations long before they would probably become evident by routine visual inspection. Their use allows for detection and control before the infestation becomes major, and usually before it spreads to uninfested food materials. Their use makes possible a more precise timing of and can greatly reduce the frequency of ULV applications and/or fumigations.

For grocery stores, it is important that the area under gondolas be open for inspection and cleaning; an after-hours Inspection may be required if the bottom shelf must be removed for access. The damaged and returned merchandise area should be isolated and emptied on at least a weekly basis or such materials should be stored in tightly sealed metal garbage cans or plastic tubs.

In the home, good sanitation is the key along with the immediate transfer and Storage of products packaged in paper, cardboard, or plastic bags into tight sealing jars or Tupperware-type Containers; spices are usually all right in their metal or glass containers. A vacuum cleaner or synergized pyrethrin aerosol can be used to remove and/or kill exposed adults. After all debris has been removed from pantry cracks and crevices, an appropriately labeled residual insecticide may be applied according to label directions if desired. If the infestation source is not found in the kitchen or pantry, then check the closets, dresser drawers, and display areas for jewelry and decorative Items made from nuts, ornamental corn, or various grains and seeds. Other Situations include rodent droppings for spider beetles; bird nests for dermestid and spider beetles; dead insects in attics, wall/ceiling voids, light fixtures, and wasp nests, stored furs and woolens, as well as old rodent bait for dermestid beetles, dry pet food and old rodent bait which can support a wide variety of stored product pests; and wild bird seed for weevils and the Angoumois grain moth.

Stored product pests can be killed by placing them in a freezer (not a self-defrosting kind) at O°F (-18°C) for 4 days. This is a particularly useful control method for decorative items of plant origin such as Indian corn arrangements, jewelry made from plant seeds, etc. Just refrigeration will retard pest development. Heat can also be used to kill stored product pests by placing stored products such as cereals in a shallow tray in an oven at 150°F (86°C) for 20 minutes with the oven door propped open a few Inches and also stirring the material every few minutes.

**Exhibit A**

**Page 30 of 44**





## INFESTATION RESPONSIBLITIES ADDENDUM

Tenant(s):  CLAUDIA GONZALEZ  JOSUE MIRON GONZA

Unit No.:  DD218

This document is an addendum to the lease agreement signed by the above resident(s) for the residence indicated at the  Prairie View Apartment Homes       Apartment community.

1. In recent months, the influx of visitors to this area has generated the need for increased vigilance amount all tenants to prevent apartment infestation of any kind before it begins. The  Prairie View Apartment Homes      Apartment community is devoted to the highest standards in implementing this policy. The apartment you are about to occupy has been tested for any form of infestation by professionals trained in this field and has been found to be clear in all respects.

2. Under existing Washington law each tenant has the responsibility to "properly dispose from his or her dwelling unit all rubbish, garbage, and other organic or flammable waste, in a clean and sanitary manner at reasonable and regular intervals, and assume all costs of extermination and fumigation for infestation caused by the tenant, " RCW 59.18.130 (2).

3. During your tenancy, should you discover any form of infestation, you must immediately notify management such that a professional treatment program may be devised to treat and eliminate any further expansion of the condition. Failure to notify management of such a condition will be considered a material breach of this agreement and will form the basis for consideration of the termination of tenancy at the  Prairie View Apartment Homes      Apartment community.

4. At move-out, your unit will again be inspected for any signs of infestation. Residents are responsible for the cost of any treatment required at that time to cure any infestation detected for which they or their guests or invitees were the cause, which charges will be deducted from the security deposit for this residence. Any charges in addition to the amount to the security deposit will remain the responsibility of the resident after the move-out and the infestation treatment is completed.

I have read and understand the above requirements with respect to potential infestation issues during my residency at the  Prairie View Apartment Homes      Apartment community and agree to comply in all respects with this addendum to my lease agreement.

| | | | |
|---|---|---|---|
| Resident | 10/13/12 Date | Landlord Representative | 10/13/12 Date |

_____    10/13/12
Resident                              Date

_____    _____
Resident                              Date

_____    _____
Resident                              Date





# SMOKE ALARM - WASHINGTON



| Date | Property Name | | Property Number | |
|---|---|---|---|---|
| 10/13/2012 | Prairie View Apartment Homes | | 360 254-8000 | |
| **Resident Name(s)** | | | | |
| CLAUDIA GONZALEZ, JOSUE MIRON GONZALEZ | | | | |
| **Unit Number** | **Street Address** | | | |
| DD218 | 12611 NE 99th Street DD-218 | | | |
| **City** | | | **State** | **Zip** |
| Vancouver | | | WA | 98682 |

A ☒ Battery ☐ 10 Year Battery ☐ Electric ☐ Electric with Battery Backup  powered smoke detection device has been installed in the above-noted unit for resident protection. The device was tested by the management on <u>10/08/2012</u> and found to be in working condition. It is the resident's responsibility to test the device at least every six months, maintain the smoke detector in proper operating condition, and replace the batteries as needed. **YOUR FAILURE TO MAINTAIN THE SMOKE DETECTION DEVICE, INCLUDING THE REPLACEMENT OF BATTERIES WHEN REQUIRED FOR ITS PROPER OPERATION, IS PUNISHABLE UNDER WASHINGTON LAW WITH FINES UP TO $200. You will not remove or tamper** with a properly working smoke detector, including removing any working batteries.

---

### TESTING ALARM

Test by pushing button on cover. This will sound alarm if all electronic circuitry, horn and battery are working. If no alarm sounds, the unit has a defective battery or other failure. You can also test alarm by blowing smoke into it.

### HUSH FEATURE

If the smoke alarm has a hush feature, you can silence alarm by pushing hush button on cover and holding for three seconds.

### BATTERY REPLACEMENT (where applicable)

If the smoke alarm is powered by a 10 year battery, it may not last for 10 years. The smoke detector has a low battery indicator which will "chirp" at 30 second intervals for a minimum of 7 days. Replace battery when chirping occurs. If equipped with a 10 year battery, replace only with a 10 year battery. If the smoke alarm is electric with battery backup, use Mallory MN1604 or Eveready 552 9 volt alkaline battery or equivalent sold at most drug, department, hardware or electronic parts stores. Never use an ordinary or heavy-duty carbon-zinc battery.

---

**It is your responsibility to report deficiencies to the owner/agent immediately and in writing; the owner/agent will correct the deficiency within 10 days.**


(Resident) CLAUDIA GONZALEZ        10/13/12 Date

(Resident) JOSUE MIRON GONZALEZ        10/13/12 Date


(Resident)        Date

(Resident)        Date


(Owner/Agent)        10/13/12 Date


**Exhibit A
Page 32 of 44**





## SMOKE-FREE ATTACHMENT

| Date | 10/13/2012 |
|------|------------|
| Address | 12611 NE 99th Street DD218 |
| Resident(s) | CLAUDIA GONZALEZ, JOSUE MIRON GONZALEZ |

This attachment is incorporated into and shall become part of the Rental/Lease Agreement dated 10/13/2012 _____ by and between Coast Real Estate Services as a duly authorized management agent for the apartment community known as Prairie View Apartment Homes   and CLAUDIA GONZALEZ, JOSUE MIRON GONZALEZ _____(Residents). The management of this community continually strives to provide a safe and comfortable living environment. Accordingly, this community is SMOKE FREE.

No Smoking: Due to the increased risk of fire, increased maintenance costs, and known health effects of secondhand smoke, smoking is prohibited in private and common areas of the property, all indoor areas, and within 25 feet of the building(s) including entryways, balconies, and patios. This policy applies to all owners, residents, guests, and service persons. Residents are responsible for ensuring that family members, roommates and guests comply with this rule. Definition of "smoking": The term "smoking" means any inhaling, exhaling, burning or carrying any lighted cigar, cigarette, or other tobacco product in any manner or form.

Phase In: All new and renewed leases in the building prohibit smoking. Please be aware that, until all leases have been renewed, you may have neighbors whose current lease does not prohibit smoking.

I have read and understand the above written Smoke-Free policy and agree to comply with the policy as an attachment to my Rental Agreement/Lease.

Resident CLAUDIA GONZALEZ          Date 10/13/10          Resident  JOSUE MIRON GONZALEZ          Date 10/13/12

Resident                                Date          Resident                                Date

Owner/Agent                                Date 10/13/12

**Exhibit A
Page 33 of 44**



# BARBEQUE GRILLS

The Management of this community continually strives to provide a safe and comfortable environment that closely complies with the safety requirements outlined by the Fire Code and the local Fire Department.

Accordingly, no charcoal or propane barbeques may be used on the outside patios or balconies of any residence or common area other than a common area designated for this use.

Due to Fire and Safety issues there will be no barbeque grills on balconies allowed.

You may store your barbeque grill on your patio.

Resident CLAUDIA GONZALEZ                    Date 10/13/12

Resident JOSUE MIRON GONZALEZ                Date 10/13/12

Resident                                     Date

Resident                                     Date

(Owner/Agent)                                Date 10/13/12

# COMMUNITY POOL RULES



Apartment Number: DD218
Address: 12611 NE 99th Street, Vancouver WA 98682
Resident(s): CLAUDIA GONZALEZ, JOSUE MIRON GONZALEZ

The pool is for the use of our residents and their guests. A resident must always accompany guests over the age of 18. Residents 17 years of age and younger must be accompanied by a parent or legal guardian at all times for safety purposes.

The pool is open between the hours of 10 am to 10 pm Sun-Thur and 10 am to 11 pm Fri & Sat

- Proper swimwear is required. Cutoffs, diapers and street wear are not permitted.
- The pool gate must remain closed at all times, except when exiting or entering.
- We do limit the number of guests to two per apartment.
- Please refrain from using air mattresses or other floatation devices.
- Food and drink must remain outside of the pool area.
- Music must be maintained at a volume that will not disturb other people in the pool area.
- Please do not bring your pets in the pool area.
- Refrain from running in the pool area.
- Smoking is not permitted in the pool area.

All persons using the pool do so at their own risk. There is no lifeguard in attendance.

Management retains the right to suspend pool privileges to any person who does not follow the pool rules.

Resident CLAUDIA GONZALEZ          Date 10/13/12

Resident JOSUE MIRON GONZALEZ          Date 10/13/12.

Resident          Date

Resident          Date

Owner/Agent          Date 10/13/12

**Exhibit A**
**Page 35 of 44**



# EXHIBIT D

Law Office of Brett M. Borland P.C.
PO Box 672108
Marietta, GA 30006
(888) 281-6788 from 8am to 7pm EST, Monday to Friday
www.bborlandlaw.com
Address ID: 15136453
May 2, 2024

To: JOSUE MIRON GONZALEZ
2825 MCCORKLE RD SE
OLYMPIA, WA 98501-9401

**Account ID:** ▮5535

**Law Office of Brett M. Borland, P.C. is a debt collector.** We are trying to collect a debt that you owe to PRAIRIE VIEW / CASCADE. We will use any information you give us to help collect the debt.

### Our information shows:

You had an agreement with PRAIRIE VIEW / CASCADE with account number ▮-218.

| | |
|---|---|
| As of October 12, 2023 you owed: | $16,296.00 |
| Between October 12, 2023 and today: | |
| You were charged this amount in interest:+ | $ 0.00 |
| You were charged this amount in fees:   + | $ 0.00 |
| You paid or were credited this amount toward the debt:  - | $0.00 |
| **Total amount of the debt now:** | $16,296.00 |

*RChIN@BBORLANDLAW.com*

### How can you dispute the debt?

- **Call or write to us by June 10, 2024, to dispute all or part of the debt.** If you do not, we will assume that our information is correct.
- **If you write to us by June 10, 2024,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents. We accept disputes electronically at info@bborlandlaw.com

### What else can you do?

- **Write to ask for the name and address of the original creditor, if different from the current creditor.** If you write by June 10, 2024, we must stop collection until we send you that information. You may use the form below or write to us without the form. We accept such requests electronically at info@bborlandlaw.com
- **Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law.** For instance, you have the right to stop or limit how we contact you.
- **Contact us about your payment options.**
- **Póngase en contacto con nosotros para solicitar una copia de este formulario en español.**

<u>Notice</u>: See reverse side for important information.

---

✂ 

DEPT 382    9961103524056
PO BOX 4115
CONCORD CA 94524

|||█████████████████████████████████|||

RETURN SERVICE REQUESTED

||||||||||||||||||||||||||||||||||||||

JOSUE MIRON GONZALEZ
2825 MCCORKLE RD SE
OLYMPIA WA 98501-9401

### How do you want to respond?

*Check all that apply:*
☐ I want to dispute the debt because I think:
  ☐ This is not my debt.
  ☐ The amount is wrong.
  ☐ Other (please describe on reverse or attach additional information).
☐ I want you to send me the name and address of the original creditor.
☐ I enclosed this amount:  $ _____

Make your check payable to Law Office of Brett M. Borland, P.C. Include the reference number ▮5535.
☐ Quiero este formulario en español.

Mail this form to:

LAW OFFICE OF BRETT M. BORLAND P.C.
PO BOX 672108
MARIETTA, GA 30006

**Exhibit A**
**Page 37 of 44**

515055517D3141



**We are required under state law to notify consumers of the following.**
**This notice does not contain a complete list of the rights consumers have under state and federal law.**

**ARIZONA**
A. Within five days after the initial communication with the debtor, a collection agency shall obtain, and be able to inform the debtor of: (1) The name of the creditor; (2) The time and place of the creation of the debt; (3) The merchandise, services, or other value provided in exchange for the debt; and (4) The date when the account was turned over to the collection agency by the creditor.
B. A collection agency shall give the debtor access to any of the collection agency's records that contain the information listed in subsection A. Ariz. Admin. Code R20-4-1514 (A), (B).

**CALIFORNIA**
"The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than you attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov."

You may request records showing the following: (1) that Law Office of Brett M Borland, P.C. has the right to seek collection of the debt; (2) the debt balance, including an explanation of any interest charges and additional fees; (3) the date the debt became delinquent or the date of the last payment; (4) the name of the creditor and the account number associated with the debt; (5) the name and last known address of the debtor as it appeared in the creditor's records prior to assignment of the debt; and (6) the names of all persons or entities other than the debt collector to which the debt has been assigned, if applicable. You may also request from us a copy of the contract or other document evidencing your agreement to the debt.

A request for these records may be addressed to:
PO Box #672108 Marietta, GA 30006 or info@bborlandlaw.com

License Number: - 10066-99

**TENNESSEE**
This collection agency is licensed by the Collection Services Board, State Department of Commerce & Insurance, 500 James Robertson Parkway, Nashville, TN 37243.

**COLORADO**
A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COAG.GOV/CAR. Law Offices of Brett M. Borland, P.C., Mailing address: PO Box 672108, Marietta, GA 30006. Toll Free No. (888) 281-6788. Local Colorado Office Address: 700 17th Street, Suite 200, Denver, CO 80202-3502. Local Colorado Office Telephone No. (303) 830-0075.

**WASHINGTON**
Law Offices of Brett M. Borland, P.C., Mailing address: PO Box 672108, Marietta, GA 30006. Toll Free No. (888) 281-6788. Licensee Business Address: 705 Second Ave Suite 605, Seattle WA 98104.

**NEW YORK & NEW YORK CITY**
New York City Department of Consumer Affairs License No. 2047375-DCA

**Please note the following:** Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to: (i) the use or threat of violence; (ii) the use of obscene or profane language; (iii) repeated phone calls made with the intent to annoy, abuse, or harass.

**Please note the following:** If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt: 1) Supplemental security income, (SSI); 2) Social Security; 3) Public assistance (welfare); 4) Spousal support, maintenance (alimony) or child support; 5) Unemployment benefits; 6) Disability benefits; 7) Workers' compensation benefits; 8) Public or private pensions; 9) Veterans' benefits; 10) Federal student loans, federal student grants, and federal work study funds; and 11) Ninety percent of your wages or salary earned in the last sixty days. To be codified at N.Y. Comp. Codes R. & Regs. tit. 23 § 1.2(a) (2014).

**NORTH CAROLINA**
Collection agency permit #113617

**NEVADA**
For debit/credit card payments, a service fee of $5.95 to $19.95 may be charged.

**Exhibit A**
**Page 38 of 44**

1

2

3

4

5

6

7

8

9

10

11

# EXHIBIT E

12

13

14

15

16

17

18

19

20

21

22

23



# LAW OFFICE
OF
# BRETT M. BORLAND, P.C.
P.O. BOX 672108
MARIETTA, GEORGIA 30006

05/23/2024

**PERSONAL & CONFIDENTIAL**

Josue Miron Gonzalez
2825 MCCORKLE RD SE
Olympia WA 98501

Creditor:          PRAIRIE VIEW APTS
Creditor Acct. No.: DD-218
Balance:           $16,296.00
Address I.D.       ███5434
Our File No.:      ███5535

Enclosed please find verification of the above-referenced debt.

    If you have any questions, or wish to discuss the matter, please contact this office at (888) 281-6788.

This is an attempt to collect a debt.  Any information obtained will be used for that purpose.  This is a communication from a debt collector.


NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.


Enclosures

Sincerely,

Law Office of Brett M. Borland, P.C.

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

Toll Free      (888) 281-6788
Facsimile      (678) 385-5347
Legal Docs     (678) 322-4367

Physical Address
2440 Sandy Plains Rd
Building One, Suite 200
Marietta, Georgia 30066

ψ Brett M. Borland

ψ Admitted in Georgia,
Arizona, Pennsylvania
and North Carolina

**Exhibit A**
**Page 40 of 44**

This communication is an attempt to collect a debt by a debt collector.
Any information obtained will be used for that purpose.

**We are required under state law to notify consumers of the following.**
**This notice does not contain a complete list of the rights consumers have under state and federal law.**

**ARIZONA**
A.  Within five days after the initial communication with the debtor, a collection agency shall obtain, and be able to inform the debtor of: (1) The name of the creditor; (2) The time and place of the creation of the debt; (3) The merchandise, services, or other value provided in exchange for the debt; and (4) The date when the account was turned over to the collection agency by the creditor.
B.  A collection agency shall give the debtor access to any of the collection agency's records that contain the information listed in subsection A. Ariz. Admin. Code R20-4-1514 (A), (B).

**CALIFORNIA**
"The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov."
California: License Number: - 10066-99

**TENNESSEE**
This collection agency is licensed by the Collection Services Board; State Department of Commerce & Insurance, 500 James Robertson Parkway, Nashville, TN 37243.

**COLORADO**
A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COAG.GOV/CAR. The Law Offices of Brett M. Borland, P.C., Mailing address: P.O. Box 672108, Marietta GA 30006. Toll Free No. (888) 281-6788. Local Colorado Office Address: 700 17th Street, Suite 200, Denver, CO 80202-3502. Local Colorado Office Telephone No. (877) 215-2552.

**WASHINGTON**
The Law Offices of Brett M. Borland, P.C., Mailing address: P.O. Box 672108, Marietta GA 30006. Toll Free No. (888) 281-6788. Licensee Business Address: 705 Second Ave Suite 605, Seattle WA 98104.

**NEW YORK & NEW YORK CITY**
New York City Department of Consumer Affairs License No. 2047375-DCA

**Please note the following:** Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to: (i) the use or threat of violence; (ii) the use of obscene or profane language; (iii) repeated phone calls made with the intent to annoy, abuse, or harass.

**Please note the following:** If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt: 1) Supplemental security income, (SSI); 2) Social Security; 3) Public assistance (welfare); 4) Spousal support, maintenance (alimony) or child support; 5) Unemployment benefits; 6) Disability benefits; 7) Workers' compensation benefits; 8) Public or private pensions; 9) Veterans' benefits; 10) Federal student loans, federal student grants, and federal work study funds; and 11) Ninety percent of your wages or salary earned in the last sixty days. To be codified at N.Y. Comp. Codes R. & Regs. tit. 23, § 1.2(a) (2014).

**NORTH CAROLINA**

Collection agency permit #113617

**NEVADA**
For debit/credit card payments, a service fee of $5.95 to $19.95 may be charged.

**Exhibit A**
**Page 41 of 44**

**Prairie View Apartment Homes**
12611 NE 99th Street
Vancouver, WA 98682
(360) 254-8000
PrairieView@Cascade-Management.com

**Claudia Gonzalez-Reinosa**
12611 NE 99th St. APT # DD218
Vancouver, WA 98682

### Lease Information

| | |
|---|---|
| Unit | DD218 |
| Lease Dates | 10/1/2015 - 9/30/2016 |
| Move In | 10/13/2012 |
| Notice Given | 10/12/2023 |
| Move Out | 10/12/2023 |
| Reason For Leaving | Eviction or Problems |
| | |
| Prepared On | 11/08/2023 |
| Prepared By | Patricia Peters |

PLEASE RETURN TOP PORTION WITH YOUR REMITTANCE

### Final Account Statement

**Ledger at Move Out**

| Date | Description | Notes | Amount |
|---|---|---|---|
| 09/11/2023 | Balance as of 09/11/2023 | | 15,533.00 |
| 10/12/2023 | Resident Rent | | 573.00 |
| 11/06/2023 | Late Charge Fees | | 50.00 |
| 11/08/2023 | Damages and Cleaning Charges | couch removal $50,blind replacement $40 | 90.00 |
| 11/08/2023 | Damages and Cleaning Charges | cleaning | 350.00 |
| | | Total | 16,596.00 |

**Deposits**

| Date | Description | Notes | Amount |
|---|---|---|---|
| 04/11/2023 | Security Deposit | HHID: 64160 | 300.00 |
| | | Deposits on hand | 300.00 |

**Note**

### Summary

| | |
|---|---|
| Total outstanding charges | 16,596.00 |
| Deposits applied to balance | -300.00 |
| Total Due | 16,296.00 |
| | |
| Deposit refund | 0.00 |
| Payment refund | 0.00 |
| Total Refund | 0.00 |



Manager Signature



# Cascade
## Management, Inc.

Real Estate Management Services

Phone: 503-682-7788 / TTY 711
Fax: 503-682-5656
9600 SW Oak St. Suite 200
Portland, OR 97223

www.cascade-management.com

11/08/2023

Claudia Gonzalez-Reinosa
12611 NE 99th Street APT #DD218
Vancouver, WA 98682

Dear Claudia Gonzalez-Reinosa,

Our records indicate that you moved out of Prairie View Apartment Homes on 10/12/2023. Enclosed you will find a copy of the Security Deposit Disposition form, summarizing any additional charges, deductions or credits applied to the security deposit of $300.00, that you paid at the time you moved in.

Please note that the balance of charges made in addition to the consumption of your security deposit is **$16,296.00.** This amount is due in full within 30 days from the date of this letter. To ensure your payment is entered to your account, *your check or money order must include the name of the apartment complex from which you moved, former apartment number and your name, all printed clearly*. Checks or money orders must be payable to **Prairie View Apartment Homes** and sent to:

> **Cascade Management**
> **Attn: MOVE-OUTS**
> **9600 SW Oak St. Suite 200**
> **Portland, OR 97223**

If you wish to dispute these charges or inquire about establishing a payment plan agreement, please do so in writing and include the name of the apartment complex and your <u>former apartment</u> number. All disputes and inquiries must be sent to the following address along with a copy of the Security Deposit Disposition form:

> **Cascade Management**
> **Attn: MOVE-OUTS**
> **9600 SW Oak St. Suite 200**
> **Portland, OR 97223**

If we do not receive payment from you or written inquires within 30 days from the date of this letter, your account will be sent to the following agency for collection:

> **National Credit Systems Inc.**
> **Toll Free: 1-800-367-1050**

Thank you in advance for your cooperation in this matter.

Sincerely,

Cascade Management

**Exhibit A**
**Page 43 of 44**



Cascade Management Inc. does not discriminate on the basis of handicapped status in the admission or access to, or treatment or employment in, its programs and activities. The Compliance Officer is designated as the 504 Compliance Coordinator.



**Prairie View Apartment Homes**
12611 NE 99th Street
Vancouver, WA 98682
(360) 254-8000
PrairieView@Cascade-Management.com

**Claudia Gonzalez-Reinosa**
12611 NE 99th St. APT # DD218
Vancouver, WA 98682

| Lease Information | |
|---|---|
| Unit | DD218 |
| Lease Dates | 10/1/2015 - 9/30/2016 |
| Move In | 10/13/2012 |
| Notice Given | 10/12/2023 |
| Move Out | 10/12/2023 |
| Reason For Leaving | Eviction or Problems |
| | |
| Prepared On | 11/08/2023 |
| Prepared By | Patricia Peters |

PLEASE RETURN TOP PORTION WITH YOUR REMITTANCE

## Final Account Statement

### Ledger at Move Out

| Date | Description | Notes | Amount |
|---|---|---|---|
| 09/11/2023 | Balance as of 09/11/2023 | | 15,533.00 |
| 10/12/2023 | Resident Rent | | 573.00 |
| 11/06/2023 | Late Charge Fees | | 50.00 |
| 11/08/2023 | Damages and Cleaning Charges | couch removal $50, blind replacement $40 | 90.00 |
| 11/08/2023 | Damages and Cleaning Charges | cleaning | 350.00 |
| | | Total | 16,596.00 |

### Deposits

| Date | Description | Notes | Amount |
|---|---|---|---|
| 04/11/2023 | Security Deposit | HHID: 64160 | 300.00 |
| | | Deposits on hand | 300.00 |

| Note | |
|---|---|

| Summary | |
|---|---|
| Total outstanding charges | 16,596.00 |
| Deposits applied to balance | -300.00 |
| Total Due | 16,296.00 |
| | |
| Deposit refund | 0.00 |
| Payment refund | 0.00 |
| Total Refund | 0.00 |



Manager Signature

**Exhibit A**
**Page 44 of 44**